Good morning, Your Honors. May it please the Court, Deputy Attorney General Pamela B. Hooley here on behalf of the Warden, who is appealing from the District Court's continued supervision of Robert Lee Griffin's housing conditions. This appeal is brought for at least two reasons, one of which is that fundamentally there was not habeas jurisdiction in the first instance to hear this case that challenges conditions of confinement. So this is really confusing to me. On the one hand, it looks like the District Court told the State of California to let Griffin out of the shoe when Griffin wasn't in the shoe. He was in Federal custody. On the other hand, it looks like the State of California just blew off the District Court, didn't keep the District Court informed, didn't obey any of its orders, just blew it off. I just don't understand. It is a very confusing case, Your Honor. At the time the District Court issued its order in 2006, Respondent's counsel actually was not aware that Mr. Griffin had been taken into Federal custody. But California was. California. The State of California was. The State of California was. Presumably, counsel could have found out where he was, and presumably what I would have expected, frankly, in real life with conscientious attorneys, is that when the attorney general's office, they would read the order, call their contact at the Department of Corrections, and say, we just got an order saying you have to let him out of the shoe. So let him out of the shoe. And the person at the Department of Corrections would say, wait a minute, let me check my records. He'd look on his screen and say, he's not in the shoe. He's not even in the State prison. He's in Federal custody. And the lawyer then in the attorney general's office would file a motion of some sort in the Federal court saying California is unable to comply with the order because California no longer has custody of the prisoner. But that's not what happened. Instead, California just blew it off. Actually, Your Honor, that's precisely what did happen. At that point, except for two things. I mean, it isn't true that California didn't have custody. My understanding is that it had constructive custody and that it was understood that he was going to come back and go back to the shoe, and that's what happened, or at least there was a dispute about that's what happened. I understand that. But more than that, meanwhile, there was litigation going on. And while that litigation was going on, nobody in California ever told the judge, wait a minute, don't do this order because he's not actually here. But, Your Honor, yes, we did tell the court that he was no longer here. After the order was issued. Yes, Your Honor. Because exactly as Judge Kleinfeld said, that is when counsel learned that Mr. Griffin I understand that. But why didn't counsel learn it at the time you were going, filing briefs and going through the litigation? Your Honor, during the 20 years this case has been pending, Mr. Griffin has been transferred multiple times. The last couple years. How long was he out of California custody at the time the order issued? He had left California custody on December 7th, 2002, and we had not told him. Right. This was 2006 now, and nobody told the judge. No one told the counsel either, Your Honor. The case had been pending, and no one thought to tell us, because the case had been pending for so long, that he had left. Were there no pleadings? Nothing was filed between 2002 and 2006? There were, Your Honor. And Respondent's counsel was unaware, because generally speaking, we don't deal particularly closely with the prisons when we are litigating issues of law. Certainly, Mrs. Griffin never informed the court that. All right. So now the order comes out, and you tell the judge that he's not there. And so the judge says, but eventually he, I guess pretty shortly thereafter he comes back and he then is put in this administrative unit in another prison. Is that right? No, Your Honor, it is not. The order came out on June 28th, 2006. Within a week, the department and counsel notified the court that Mr. Griffin was in Federal custody and that he was no longer in the Pelican Bay shoe. The court shortly thereafter closed its file, indicating that the order had been complied with, because Mr. Griffin was no longer in the shoe. At the time he was taken into Federal custody, it was believed that he would likely stay in Federal custody and never come back. I don't understand what close the file means. The court wrote in its order on August 18th, 2006, that Respondent's had complied with the order and at that point closed the file, indicating that the case was over, Your Honor. I understand the word dismissed, when a case is dismissed. And I understand the word judgment, when there's a final judgment in a case. Close the file sounds like some metaphor about taking the file and closing it. And that's not how you terminate a case. So I don't know what it means. We interpreted the order to say, following the. What words did it say? Did it say dismissed? What did it say? To go back several years, if you'll bear with me while I find it. It's at docket 123 in 197 of the excerpts of record. On June 28th, 2006, the court granted Petitioner's writ of habeas corpus. The court is satisfied, based on Respondent's response to the court's order on July 5th, 2006, that Respondent's have complied with the court's order. Accordingly, the court orders the clerk to close the file. But as it turned out, in fact, the, as I understand it, the California, as I said before, didn't actually give up custody. And instead, they seem to have had him in an out-to-court status. And in fact, as he was returned in the same status, it wasn't that he, and when he was returned, he was returned to what the magistrate judge and then the district judge determined was essentially the same conditions to which they had ordered him released. So the judgment of the district court was that he eventually, in the long run, was that he hadn't been released. And you didn't appeal the 2006 order ever. You did appeal the 2009 enforcement, as I understand it. You later filed a 60B motion, which was denied and which you never appealed. And so in terms of Judge Kleinfeld's assertion that to some degree you blew off the district court, I mean, that is my overall view of the record, because you're now saying that the – you should not – you should be able to keep him in the shoe even though there was an order that you don't keep him in the shoe. And you're – and yet you never – and although you made a 60B motion, which would have altered the judgment, you never appealed it. So I'm at a loss to see why at this juncture, with regard to the enforcement of a 2006 order, we should be taking into account what may be legitimate concerns about new information, which you present – some of which you present to the district court but which you never appeal to us as to changing the order, the judgment. If I could take those in turn, Your Honor, had the Respondent realized in 2006 that the district court and Griffin would interpret that order to bind them forever from housing him in any other place that is a type of security housing, that appeal certainly would – Kagan. Well, whatever. You didn't do it. And in fact, the district court's view was that his order did cover not just the Pelican Bay shoe, but anything that was tantamount to the Pelican Bay shoe, which is – and I'm not clear about whether you're attacking that construction, but that was his conclusion. Just to follow up on that, isn't it a really kind of a simple thing? I mean, you have a 2006 order of the district court. It doesn't just go away. It's still the order of the court, right? So don't you have to get relief from that order in some fashion and probably through a 60B motion before you can just ignore it? It's as simple as that, isn't it? Not necessarily, Your Honor. And that gets to the heart of why this really wasn't properly brought as habeas in the first instance. Habeas is designed to correct something that exists. All right. But there was a determination of this Court that it was proper in 1998. And the – and again, that was part of the final judgment in 2006. If you thought there wasn't habeas jurisdiction, that was enough reason to appeal the 2006 order, but you didn't do it. I think you're absolutely right. The court – that order should have been vacated. But just because a court is wrong doesn't mean that you can do nothing about it. You can't say, well, we'll just leave that judgment on the books because we don't think it will affect us. And then if it turns out to affect you, well, that's a shame. And it looks like that's what the State did. I mean, in 2006, when you got the order, that's when you had to – the lawyer had to seek to bring about compliance by the department and would have found out that Griffin was not in the shoe, and that was the time to move to vacate the order. At that time, Your Honor, the order was very clear that what was being challenged was Mr. Griffin's incarceration in Pelican Bay under those particular circumstances. He was no longer in Pelican Bay. And it was plainly moved, so you should have moved to vacate it at that time. We didn't necessarily know that he was ever coming back. We didn't have to. It didn't matter. It didn't matter. Well, then even if – I mean, what you're saying, we didn't know if he'd ever come back, is like somebody saying the reason I didn't appeal the meritless $10,000 judgment against me is I never thought I'd have $10,000. Well, if you don't appeal it and eventually you get the $10,000, that undeserving creditor is going to take it from you, and that's analogous to what happened here. That's what I meant by blowing off the district court. You should have told the district court in 2006 by moving to vacate because it was moot when issued. Even still, taking the language of the order, the plain language is directed at Pelican Base Security Housing Unit and a policy that required debriefing and the district court's erroneous conclusion that Mr. Griffin's long-term confinement was due. So what this case comes down to – I mean, the one thing that seems possibly properly before us is the assertion that the district court misconstrued its own order. Yes, Your Honor. But that's about it, because the habeas issue is final in the history of this case. The 60B motion was not appealed, so you can't get a change in the order. And the only possibility is that the district court misconstrued its own order, and that's basically it. We did argue, Your Honor, that the district court misconstrued the order because it was expressly limited to Pelican Bay, not other security housing units, and was not contemplated to cover new and different decisions. Well, he said he did contemplate it. You're saying he didn't contemplate it. The question is, how do we review a district court's construction of its own order? The order language is plain. It is directed at the Pelican Bay security housing unit under a debriefing policy that no longer exists. Two and a half years after the order was issued, Mr. Griffin came back to custody as a new inmate. At that point – Why couldn't we just ignore this whole debate about the 2006 order and just look at the 2009 order? We can, Your Honor. The 2009 order exceeds the scope of the petition and exceeds the scope of the order, which was directed solely at the Pelican Bay security housing unit, not a temporary order. Well, the 2009 order doesn't talk about Pelican Bay. It says, let him out of administrative segregation at, what was it, Corcoran or something? It came from Pelican Bay. It was still at Pelican Bay. And if I may, just as to the jurisdictional issue, the decision by this Court in 1998 that habeas jurisdiction was appropriate is law of the case, which can, in this case should, be overturned because of intervening case law. Do we have any case in the Court to the contrary, directly to the contrary, or in the Supreme Court? We have Gonzales v. Arizona that says when intervening case law comes to the contrary. I know, but what is the intervening case law? Do we have any case in this Court? I understand that if we were re-litigating the case now, it might come out otherwise. But is there any case law, actual case law, in this circuit or in the Supreme Court undermining the Bostic case and the Seventh Circuit case underlying Bostic? I don't know of any. Yes, Your Honor, there are. Wilkinson v. Dotson, Skinner v. Switzer from the Supreme Court, Blair v. Martel from this Court that finds unless a challenge necessarily results in speedier release from prison, there is no habeas jurisdiction. But there's still this overall concept of – I forget what the term is, but, you know, confinement, whatever you want to call it. Bahamut v. Close from the Supreme Court of the United States makes clear that the custody at issue refers to the original judgment, not subsequent disciplinary confinement such as that in this case. Wouldn't a – another way – let's say we don't agree with you. We end up affirming the district court's opinion in this case. Isn't it a fairly simple matter for the State then to move in the district court to stay the habeas order and refile your 60B motion with all the new conditions, all the new facts regarding the Federal conviction for murder and so forth? The district court may well agree that all this new information is very important and may well just stay, if you ask, may stay the habeas and move on to the next case.  don't agree with you on the new conditions. We tried to do that unsuccessfully and did not appeal, Your Honor, because there was still the possibility given the court's referral to the magistrate judge for an evidentiary review of the conditions that corresponded. All right. But that's another instance in which, as Judge Kleinfeld says, if you don't appeal, you don't appeal. I mean, that may be a tactical decision, but you didn't appeal. It wasn't that it was tactical, Your Honor. It was that it was not a final order, and it was possible that the case 60B motion Of course it was a final order. You sure have a lot of labor-saving devices over there in the Attorney General's office, don't you? No, Your Honor. Why is a 60B motion not a final order? I mean, you made a 60B motion. It was denied. It's appealable. Because at the time that order was issued, the court was still contemplating dismissing this case because So what? But it was still, but the 60B denial was a final order. The only issue ultimately relevant was where in Mr. Griffin's custody was. And if the district court had concluded that he believed Counsel, you keep thinking that the only issue is the one that you think is right. And if the court disagrees with you, you can ignore the court. That's obviously an incorrect understanding of the law. Since your time is out, though, I do want to ask you one more thing before you sit down. The underlying issue in this case is obviously that California is concerned that Griffin is still active in the management of the Aryan Brotherhood in prison and is going to kill snitches if they let him out of the shoe. Is there anything in the record that shows that anything has changed about that? I know there's one thing, and that is the Federal RICO conviction. Is there anything else in the record that shows that there's some change and that it's more likely or at least as likely to kill snitches or get other people to kill snitches as he used to be? There are, Your Honor. We attempted to introduce confidential documents, but we have the declarations of the Director of High Security Institutions. Okay, but you didn't introduce it and you didn't appeal that either. In other words, you could have appealed his decision that it had to be handed over to the lawyer, his lawyer, but you didn't appeal that either, so it's not in the record. We took a writ on that, Your Honor, in the matter of in Raul Lopez, and that is Well, fine, but that's now the end of the case and you could have appealed it and you didn't. I mean, there's just a bunch of very strange decisions here. So it's not in the record, it's not in the record, the end. We have the declarations of people who have looked at all of his case factors to see that he still has evidence of current gang activity, and we have the fundamental inconsistency of the district court's order finding that his confinement in Shoe vitiated gang activity when this Court just last year upheld his RICO conviction, showing he was still active. As of 1997. Until at least 1997, Your Honor, which was coextensive with the beginning of this case and which undermines his credibility in everything he said in this case. And you could have filed a six to be motion, but you didn't follow up on it. So basically what you've got is essentially unchallenged court orders saying let him out of the shoe because it's stricter confinement than you need and material quite persuasive to the prison authorities that it's too dangerous to let him out of the shoe because he's going to kill snitches and never have the Twain met because the prison authorities are going to kill him. And you could have done that in the district court. Kagan. Well, here, in terms of appealing things here, if you were unhappy with the district court. The order was interpreted to govern only Pelican Bay. But you could have gone through a move. The attorney general's office could have you say the order you keep saying the order was interpreted to do X, okay? I'm a district court judge. I deal with this kind of stuff all the time. The best thing to do in those circumstances is to go back and ask the district court judge, what does this order mean? You know, now he's in a different institution. A motion for clarification, something like that. Tell us, does your order apply to this other institution? Tell us, does your order apply to administrative segregation as well as the other type of segregation? Let the district court judge have an opportunity to tell you, yes, that's what I meant. Or, no, that's not what I meant. Instead, you take the position that we're just going to interpret it our way, and we don't have to follow it. We believe that when the court. And you may put us in a position where the way the law and the various procedural developments are, we have to enforce an order that lets an Aryan nation leader out where he can kill snitches, just because the attorney general's office won't bother to do the right paperwork. We believed that the district court indicated compliance had been found when we notified them that he was not in the Pelican Bay Shoe. We believe and still maintain. Wait. You notified him. You didn't notify him that he was in some other shoe. You notified him that he was in Federal prison. Yes. He was in Federal prison, not in the Pelican Bay Shoe, which has unique conditions that are very different from any other supermax in the State. And when he came back to administrative segregation, that was temporary housing. At the time you notified him of that, his official status was out to court, right? Yes, Your Honor. So, in other words, he was still officially within the custody of the California prisons, but out to court. But at that point, Your Honor, we had no control over his housing. We could not have. Well, that's true. And nobody is faulting you for what happened to him when he was in Federal prison. But on the other hand, it isn't true that he really was, quote, released as far as California was concerned, as was evidenced by what happened when he came back. But, Your Honor, effectively, when he came back, he had been gone for five years. And at that point, putting him in the general population would not have been appropriate given that he had been gone so long. So he was placed temporarily. As Judge Smith says, you could have then gone to the judge and explained that, but you didn't do it. That was done in the context of litigating over the 2009 order. After the fact. Right? Your Honor. And in an enforcement proceeding. In what was characterized as an enforcement proceeding, yes, Your Honor. And in those proceedings, we showed that. Okay. We are very much over your time. Thank you for your argument. Good morning. I think it's still morning. I'm Pamela Griffin. I'm appearing on behalf of Robert Griffin. Counsel, my problem with your side of the case is the flip side of my problem with the Attorney General's side of the case. We have a situation where we're being asked to keep things the way they should have been six years ago if the situation had been different six years ago and Griffin had still been in the shoe at Pelican Bay six years ago. A couple of people, six years is a lot and there's no reason to assume that everything is the same. We know one really important thing is different and that is a new federal felony conviction for RICO related to the Aryan Nations. It seems to me as though even though the Attorney General's office didn't do what it should have done, it just plain blew it off. Nevertheless, that 2006 order was moot when issued and carrying a moot when issued order over to six years later under different circumstances is kind of a ridiculous thing to do and a serious thing to do where the whole issue is whether this man is going to kill snitches. How do we justify that? I understand your point on that, Your Honor, but the 2006 order was not moot when issued. It was not mooted by the law. I thought it was because it said let him out of the shoe and he wasn't in the shoe. Habeas says give somebody his liberty from some sort of custody and it said that. It said let him out of the shoe. As Judge Berzon recognized, he was still in the constructive custody. I don't know what constructive custody means. It means that basically he was still on the books as their prisoner. He was there under the same status that he had always been. Habeas means release the body. As for being on the books, the books don't hold the body. They might never get the body back. The feds might do their prison first and he might die in Federal prison. A case is not moot, Your Honor, unless it's incapable of repetition. It was understood that Griffin would come back to the State. The fact that it's incapable of repetition and evading review exception to mootness only applies when the case is likely to evade review if it is refiled when there's a genuine controversy. This case would not. If they put him back in the Pelican shoe, they could litigate again. But, well, first of all, two things. Has the defendant, the Respondent, ever contended that this case was moot? I'm sorry? Has the Respondent ever contended that this case was moot? Has there ever been litigating in the district court on the ground that it was moot? The Respondent, prior to the original order, made an argument based on mootness based on their inactive review process. Right, but not on this ground. They never contended that he wasn't moot. No. No. And it was never litigated as such in the district court. Right. And he never asked to vacate the opinion, the order on that basis. So the order was still in effect at the time he did come back. And to your point, there's one thing I do want to point out. The circumstances under which Griffin is retained today in shoe. I'm sorry, I'm not hearing you. The circumstances under which Griffin is retained in shoe today are exactly the same circumstances that existed prior to the original order. I thought he's not in the Pelican Bay shoe now. He's not, but the Pelican Bay. So the order in 2006 said let him out of the Pelican Bay shoe. He's not there. Focusing on that particular order. Actually, the order said let him out of the shoe. Different parts of the order referenced Pelican Bay shoe because that's where he was. The analysis in the district court's opinion, original order, was not dependent on conditions in Pelican Bay shoe. It focused substantially on a body of case law addressing the duration of confinement in segregated housing. None of that case law related to Pelican Bay. It covered a wide range of administrative segregation, most of which was significantly less restrictive than any modern supermax lockup unit before the Court of Griffin is today. There are two ways of interpreting that order, I suppose. One is let him out of the Pelican Bay shoe. Another is you can't confine a prisoner in special custody that's more restrictive than general custody if the only way he can get out is to snitch on fellow gang members. I think the district court made very clear, Your Honor, that its ruling was not based on housing conditions. It specifically said the conditions of the conditions of the objective conditions of the objective conditions, but not whether it was in Pelican Bay or somewhere else, and the fact. It was based on a combination of policies and practices of the Department of Correction, and one leg of that stool was the harsh conditions of administrative segregation. Another leg was the fact that there's no way out of that other than by debriefing. Another fact was that the risk to the personal risk and family risk brought on by debriefing, which makes an informant out of an inmate.  Sotomayor, it appears that there's about to be or has been some system-wide reconsideration of the whole debriefing just now, and of the. This happens periodically, Your Honor. Wow. And the current proposal for a step-down program was kind of resulted from the hunger strike that went on last year, and it's vaporware. There's no change in regulations. There's no change in operating manuals. Nothing has happened on it. It's seems to be vaporware. I'd like to also, I understand that you seem to have concerns about Mr. Griffin's dangerousness, and I did want to emphasize that the sole basis of his retention in shoe, the official basis, classification, documentation, it's all in the record here, is the 2008 validation and review. The RICO case has never been cited as the basis for his confinement in shoe, and it could not be under the Department's own rules. Because it's old or because of what? Because it's old. Their rules. That's right. It's not that old. A RICO conviction, it's a conviction. It's not just a case. And it's a conviction for gang activity in prison, isn't it? The Department's rules focus on activity, theoretically, although they don't pay much attention to that. But they do. Isn't it a conviction for gang activities in prison? It's a conviction for conspiracy. In prison? To gang activities in prison, going back decades. Mr. Griffin presented a defense of withdrawal, and the government argued in part that he could not have withdrawn because he had not debriefed under California regulations. And he lost, right? Yes. So as far as his defense of withdrawal, it was not established. Right. As of 1997. Yes. So that basically the Department's regulations bar the use of any allegations of gang activity that are over 6 years old. Over how old? 6 years. Okay. So they could not use that. So by 2008, it was not within their own regulations. Under 2000, no. And by 2006, it wasn't either. Yes. No, it could not have been because the latest allegation in the RICO case was 1997. In addition, the new disclosures that were presented after the fact by the State have never been cited as the basis for Mr. Griffin's true confinement. And they also could not be. Incidentally, why isn't the 2006 order, even if it wasn't, if the court wasn't without jurisdiction because of mootness, why didn't that order end when the judge wrote in a subsequent order that the clerk should close the file because it satisfied that California has complied with the court's order? I don't know that term, close the file. It's not in the Federal Rules of Civil Procedure. Right. But evidently, that's some sort of administrative term they used there that means dismiss the case. What happened in that case is there were some filings that sort of crossed in the mail, so that the State responded to the judge's inquiry as to whether they had complied by explaining that he was out to court, on out-to-court status, and that when he returned, they stated, this is what we're going to do, treat him as a new inmate and, you know, put him in housing pending classification. So the court looked at that and thought, okay, that's fine. I'm not sure exactly what close the file means. In the meantime, we saw that and understood exactly what they meant, which is that they would bring him back and reconduct the exact procedure that the district court found to be illusory, the inactive review. And through that procedure, basically revalidate him and put him back in exactly the same position he had been at the time of the original order. The thing about closing the file, as near as I can get to it with some rule of civil procedure, is that it's like when a case is dismissed, and then it's hard to reopen a case. We have something like that when we issue a mandate. We're very limited in how we can recall a mandate if we want to do something else in the case. We can only do it under very limited circumstances. And I don't see how, after saying that the case is closed because California has complied, the district court can do more in that case as opposed to entertaining another case. Well, what we did is then we immediately filed something with the court pointing out our issues with how the State had responded, and that basically we interpreted that as their statement that they intended. And what you're really saying is the judge reconsidered his order to close the file, whatever close the file means, and unclosed the file. Yeah. And that's apparently what the court did, because then it issued further orders requesting the original set. Presumably what close the file means was the original order here was let him out and tell me. And so all he meant to say what I interpret close the file to mean, you know, I don't have to worry about this anymore, send it to the finished cases. It doesn't mean it was dismissing it. He was simply saying there was a judgment, and I don't have to worry about it anymore. And as it turned out, he did have to worry about it some more, and he did worry about it some more. But it doesn't seem to have any technical meaning in terms of the cases. The case never existed. There was a judgment, and the question was had it been complied with or not. He thought it had been, and then it turned out it hadn't been. I mean, is that essentially what you're at? Yes. And you had not had an opportunity to point that out before he issued that order. Right. Right. It doesn't seem to me to be such an extraordinary proposition that a district judge has the right to ensure continued compliance with his past orders. We close files or terminate cases, however you want to phrase it, all the time for lots of different reasons, not the least of which is that we have to, we track how many cases we have open, and especially old cases. The administrative office of the courts likes to pay attention to that. So we like, when things seem to be finished, we like to say, well, they're finished, and that's how we record them. That's pretty normal, but if later it turns out that an order is not being complied with, then, you know, we, the order is still in effect. It doesn't go away. It doesn't disappear. Right? So let me ask you this. I mean, just trying to be practical here, it seems like, you know, you want to say to the State, you have to respect these orders, and that would seem to call for affirming the district court and upholding the order. But why wouldn't it make sense for either this court to stay the effect of the Habeas, granting of the Habeas, to allow the district court to consider a renewed 60B motion with respect to this new information, so that we, so that a dangerous person isn't improperly let out into the general prison population? Why doesn't that make sense here? The new information was already included in the 60B motion that was filed with the district court. But you'd say that was raised to the contrary in terms of that motion, so it would have to be a new motion. I thought that motion was denied because this case was on appeal. Denied on the merits was it? Well, the motion was initially denied on that procedural point. But when the State filed a motion for reconsideration, I think the district court realized, oh, I have complete and full jurisdiction to hear a motion for relief from the original order, which is not under appeal. So basically, the district court said, when they filed a motion for reconsideration, no, I'm not going to reconsider, because if I did, I would deny it, and here's my analysis as to why I would deny it to the original order. Oh, you ultimately denied it on the merits. On the merits of the original order. And the compliance order was not denied. But they could file, certainly they could file a new 60B motion now based on evidence of current evidence.  And I don't know if that's included in the 60B motion. But that I know of is the relevant phrase in that response. Actually, I mean, unless there's something new subsequent to the date of this hearing. Because everything It seems pretty plain here that the district court is shielded from knowledge. The Attorney General's office doesn't give them any more than the Attorney General's office thinks they need to give them. And they undoubtedly have more stuff that they haven't disclosed to the district court and you. Well, I'd also like to point out that the district court actually gave the State a lot of flexibility in what they can do in response to this order. It didn't just say release them to the general population. They said you can release them to alternative housing that basically is less restrictive. This is what they do every day with inmates who have debriefs, some of whom have abysmal records of violence and misbehavior in prison, as compared to Mr. Griffin, who has 27 years without a single rule violation. And basically, they have developed housing that accommodates the special security concerns that apply to debriefing inmates, and at the same time, they give them the highest privilege levels in the State. And they allow them contact visits, they allow them telephone calls, they allow them to have jobs. They basically can already manage this kind of issue. And it's very easy, it's very easy, and it's less expensive for them to develop these alternative forms of housing. They could basically keep Griffin in the same cell and just change his privileges. I mean, they have a wide range of flexibility in how they can deal with it. They just refuse to. Griffin has actually offered to sit down with them and discuss, you know, compromise on alternative housing. And, you know, he's flexible. They simply have not responded. And they have proposed at no time during the enforcement actions have they proposed any plan or proposal for putting him anywhere other than SHU or ASU. Okay. I think you're out of time unless there's anything else you really need to tell us. Thank you very much. We'll give you a minute in rebuttal, because you went way over your time as well. I'll speak quickly, Your Honor. First, the decision review unit, which is responsible for housing Mr. Griffin, did take into account his RICO conviction when it placed him in the Corker and SHU. That decision was in 2009, and it's at the excerpts 104 to 105. Second, I get back to the fact that the 2009 order was incorrectly issued because he, the reason for the 2006 order was because of the Pelican Bay SHU. It's very clear from the order that it's directed at that particular housing setting and the long time he had been there and that he wouldn't debrief. But when he came back in 2009 to that administrative segregation housing unit, that was a temporary place holder to figure out where he should be housed. If, in fact, the review at that point had not revealed any current gang activity, Mr. Griffin likely would have been sent to the general population at that time. But the department was put in the intractable position of having to take the temporary time, reevaluate him, and then they didn't do some perfunctory inactive review. They actually did a thorough review and found 11 pieces of evidence showing that he was still in his gang, and that's why he needed to be placed. Sotomayor, which you gave or did not give to the district court in your 2010 CCB measure. That information about the revalidation is summarized, however, at 104, that he was revalidated, and the district court. I infer from the word, however, that the answer to Judge Berzon's question is no, we did not give it to the district court. I think the validation is in there, and I'd have to look at the record because I've cited the validation, and no one disputes that he was validated on 11 pieces of evidence. That is in the record. And the other thing is that the district court has said that he is still a gang member and, therefore, we want you to change your order, and that's what we're going to do. And I'm not going to go back to the 60B alternative, which seems like the logical way to have said to the district court what you're saying to us, which is circumstances have changed. Here are as a bunch of evidence demonstrating that, in fact, he is still a gang member and, therefore, we want you to change your order and say that we don't have to release him. And we tried that, and as Judge Sotomayor said to us, we're not going to do that. All right. So that's why I asked you, is this information that you're now relying on, information that you gave the district court at the time of the 60B motion? Yes, Your Honor. Okay. And then you didn't appeal it. No, Your Honor, because the next step in the case was the district court was doing a site inspection of Cork. Right. And if the order contemplated something more that all shoes would be covered, if the original order covered all shoes, why would it have been necessary to do a site inspection to see what the Corcoran shoe was like? Because he was trying to see whether it was going to go beyond labels to see whether it was the same thing that he as what he had prescribed in the first place. He was basically giving you the chance to demonstrate that it wasn't. He could have just gone by the name, but he didn't. And that was argued in the compliance brief, and we maintain still to this day that the Corcoran shoe is fundamentally different from the Pelican Bay shoe because of the physical attributes of the Pelican Bay shoe that underlie the original order. And Mr. Griffin isn't in the Corcoran shoe currently because he refuses to debrief, which was what the original order was based on. The terrible conditions at Pelican Bay, the refusal to debrief. It's a new and different circumstance, a completely different order. This would be like saying if Mr. Griffin had been convicted of a minor crime and thrown in the shoe in 1992, and then that conviction and putting him in the shoe was cruel and unusual because it was such a minor crime, and that was overturned, and he then comes back with a different conviction that, oh, this Court ruled that the shoe was unconstitutional then, it's still unconstitutional now, even if it's not the same shoe and the same policies don't exist. And that's how the order was properly interpreted. Sotomayor, the same debriefing policy doesn't exist. The debriefing policy is no longer in place under the – when the case was first filed. The only way that the conditions were just a – actually, to the Court, they seemed like part of the case. To me, they – I didn't see why they were critical. It looked like what was critical is, do you have to snitch out other gang members to get out of the shoe? And the Court thought, we can't properly require people to snitch out other gang members to get out of the shoe because it's liable to get them killed. So it's cruel and unusual punishment. Yes, Your Honor. That was the policy at the time the case was filed. And it's no longer true that you can get out of the shoe by doing that? You can also get out of the shoe by being inactive. And there's evidence in the record that this process works for inmates who are not inactive. Just sit quietly and don't snitch anyone out for six years and you're out? Yes, Your Honor. That's the way it works? Yes, Your Honor. And it's worked and it's been effective. And as a – The district court found that that wasn't a change. You're appealing – I don't know if you're appealing that. I don't know what you're appealing. But are you appealing those factual determinations that the district court made? We're appealing the fact that as of the 2009 order, that order was inappropriately issued because even if the 2006 order was proper, the order was addressed at long-term shoe confinement under a policy in which you can only get out based on debriefing. They are not contesting that. The district court rejected that for various – on various factual bases, i.e., the fact that the district court said that debriefing was essential, that debriefing was essential, and that debriefing was essential. And you're saying that this was no less restrictive housing and that, in fact, as a practical matter, the debriefing was still essential. And you're saying that you're – are you saying that was a clearly erroneous finding? We do agree – we do believe that is a clearly erroneous finding. Did you argue that in your brief, that it's a clearly erroneous finding? We effectively argued the same thing by saying that it was compliant and it did not violate the order, Your Honor. If the order says Pelican Bay State – Have you ever demonstrated that it was a clearly erroneous argument? We've demonstrated – the words clearly erroneous are somewhere in my brief, and I will point them out, because it has to be clearly erroneous for a court to characterize an order to forever cover every other legal argument. He had some factual findings that underlie his conclusion that the order was not being complied with. There were factual – what I would understand to be factual findings about the nature of the confinement and the nature of the debriefing policy. I do not understand you to have appealed those factual findings. We did argue, Your Honor, I believe, by taking this appeal and arguing that there's evidence that the Pelican Bay shoe and administrative segregation aren't the same. We've argued that to this Court. Similarly, we've argued to this Court that the Corcoran shoe is very different from the Pelican Bay shoe. All right. Your time is well over. And still there's the jurisdictional issue. I thank both of you for helpful arguments in an interesting and complicated case. Thank you. And we've certainly both known the circumstance as well. The case of Corcoran v. Comings is submitted.
judges: Smith, Kleinfeld, Berzon